**Robert L. LEVINE et al., Plaintiffs,**

v.

**BIDDLE SAWYER CORPORATION et al., Defendants.**

**No. 74 Civ. 347.**

United States District Court, S. D. New York.

Oct. 4, 1974.

Cleary, Gottlieb, Steen & Hamilton, New York City, for plaintiffs; George Weisz, New York City, of counsel.

Emmet, Marvin & Martin, New York City, for defendants; Thomas B. Fenlon, Bernard F. Joyce, New York City, of counsel; Morris, Nichols, Arsht & Tunnell, Wilmington, Del., of counsel as to Point III.

## MEMORANDUM

BONSAL, District Judge.

Plaintiffs moved for leave to file an amended complaint. Defendants moved pursuant to F.R.Civ.P. 12(c) and 12(h)(2) for judgment dismissing the complaint and, alternatively, for a protective order pursuant to F.R.Civ.P. 26(c) and 30(d).[1] At argument on July 8, 1974, plaintiffs' motion to file an amended complaint was granted and it was stipulated that defendants' motion would apply with equal force to plaintiffs' amended complaint. The parties were given until July 12 to file additional papers, and none have been filed, except a "Further Reply Memorandum" filed by the defendants.

This litigation concerns Biddle Sawyer Corporation ("Biddle") which as of December 1, 1973 had issued and outstanding a total of 3,750 shares of common stock. At that time, plaintiffs

---

1. Defendants' motion for a protective order was withdrawn by stipulation and order filed July 5, 1974.

owned 300 shares, or 8%, of the outstanding common stock as follows:

| | |
|---|---|
| Robert L. Levine | 200 shares |
| Laurence W. Levine | 75 shares |
| Jay H. Levine | 25 shares |
| | 300 shares |

The remaining 3,450 shares of Biddle, or 92%, were owned by the individual defendants, as follows:

| | |
|---|---|
| Wallace Chavkin | 1,275 shares |
| Jack D. Haim | 1,275 shares |
| Robert E. Chavkin | 600 shares |
| Benjamin Benveniste | 300 shares |
| | 3,450 shares |

The amended complaint alleges two causes of action arising out of the same operative facts. The first cause of action claims that defendants violated section 10(b) of the Securities Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, 17 C.F.R. § 240.-10b–5. The second cause of action is founded on pendent jurisdiction and claims a violation by the defendants of the laws of Delaware.

The amended complaint alleges that commencing in late 1971 or early 1972, the individual defendants began to waste the assets of Biddle by paying themselves exorbitant salaries and other compensation, and by promoting other measures for their personal benefit. This allegation is the subject of a derivative action instituted by the plaintiffs in the Supreme Court of New York, New York County, on December 21, 1973, on behalf of Biddle against the individual defendants, which action is still pending.

Plaintiffs then allege that in or about January 1973 "by reason of the complaints which the plaintiffs had made concerning the excessive compensation which the individual defendants had taken for themselves . . . and because the individual defendants desired to obtain for themselves all of the fruits and benefits of the future profitability of Biddle Sawyer to the wrongful exclusion of the plaintiffs, the individual defend-

ants herein set upon a fraudulent scheme and conspiracy to force the plaintiffs herein to relinquish their stock ownership in Biddle Sawyer, against their will and for a sum far less than the true value thereof." The "fraudulent scheme" is alleged to have taken the following course:

In or about January 1973, the individual defendants dismissed plaintiffs' law firm as counsel to Biddle and dismissed plaintiff Robert Levine as Secretary. Thereafter, between January 1973 and June 1973, the individual defendants invited plaintiff Robert Levine to various meetings to induce him, and through him, the other plaintiffs to sell their shares in Biddle so that the individual defendants would own 100% of the company. At these meetings the individual defendants misrepresented the financial condition of Biddle and threatened plaintiffs with costly legal action if they refused to sell. During this same period, the defendants were taking monies from Biddle to keep down the value of the stock.

On December 3, 1973, plaintiff Robert Levine, who was a director of Biddle, was advised that the other members of the Board of Directors wished to have a meeting in early January 1974. A date of January 7, 1974 was chosen. Plaintiff Robert Levine was later told that the purpose of the meeting would be to vote additional compensation and a pension plan for the benefit of the individual defendants. Plaintiff Robert Levine expressed opposition to these proposals as being unfair to the minority stockholders. On December 10, 1973, plaintiff Robert Levine received a notice of a meeting of the directors of Biddle to be held on January 7, 1974, but no agenda as to the business to be transacted. The following day he received a notice of a meeting of the Board of Directors of Biddle's wholly-owned subsidiary, Enzyme Development Corporation, also to be held on January 7, 1974. The stated purposes of the latter meeting were "renegotiation of existing employment contracts" and "adoption of a pension plan."

Both of the January 7, 1974 meetings were cancelled without prior notice to plaintiff Robert Levine. The purpose of these notices of meetings was to put further pressure on plaintiffs to sell and to conceal plans to squeeze plaintiffs out of Biddle through a merger.

Commencing in November 1973, the individual defendants, without notice to plaintiffs, began consideration of some form of merger which would extinguish plaintiffs' stock ownership in Biddle. On December 18, 1973, a decision was made by the individual defendants to merge Biddle with a company not then in existence, for the sole purpose of squeezing out plaintiffs. Without notice to plaintiff Robert Levine, Delaware counsel and an accounting firm were retained by Biddle to accomplish the merger.

Also without notice to plaintiff Robert Levine, the firm of F. S. Mosely, Estabrook Inc. was retained to evaluate Biddle for the purpose of deciding how much to offer the plaintiffs upon surrender of their shares pursuant to the merger. In order that the valuation be as low as possible, the individual defendants misrepresented the financial condition of Biddle, withheld relevant financial information, and instructed the Mosely firm to write an opinion placing as low a value on Biddle as they possibly could. The Mosely firm rendered a valuation addressed to the Board of Directors of Biddle on December 29, 1973. No copy was furnished to plaintiff Robert Levine, who was still a director of Biddle, and Robert Levine's request for a copy, after learning about the valuation

in January 1974, was refused. As a result of the misrepresentations and non-disclosures of the individual defendants, the value placed on Biddle by the Mosely firm was far less than its true value and inconsistent with advice given to the Biddle Board of Directors by a predecessor in interest of the Mosely firm in a prior year.

To extinguish plaintiffs' interest in Biddle through a merger, the individual defendants, on December 27, 1973, caused the incorporation in Delaware of a shell corporation under the name of Biddleco Corporation ("Biddleco") to which they transferred their 3,450 shares of Biddle in exchange for 100% of the stock in Biddleco.[2] Thereafter, on December 31, 1973, the individual defendants caused to be filed with the Secretary of State of Delaware a "Certificate of Ownership and Merger Merging Biddleco Corp. into Biddle Sawyer Corporation." On January 2, 1974, notice of the merger was sent to the plaintiffs. Under the terms of the merger, plaintiffs' Biddle stock was to be cancelled except for their right to receive $1,199.75 per share.[3]

For the purposes of the defendants' motion for judgment on the pleadings, the allegations of the complaint must be taken as true. 2A J. Moore, Federal Practice ¶12.15 at 2343 (2d ed. 1974); Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 353 F.Supp. 264 (S.D.N.Y.1972). If the complaint sufficiently alleges a scheme to defraud plaintiffs and that scheme involves a short form Delaware merger, the plaintiffs may be treated as forced sellers

2. Under section 253 of the Delaware Corporation Law, in any case where at least 90% of the outstanding shares of each class of stock of a corporation (here Biddle) is owned by another corporation (here Biddleco) and one of such corporations is a Delaware corporation, the corporation having such stock ownership may merge itself into such other corporation by filing with the Secretary of State a certificate of ownership and merger setting forth a copy of the resolution of its board of directors to so merge and the date of the adoption thereof; pro-

vided, however, that where, as here, Biddleco did not own all the stock of Biddle, the resolution of the Board of Directors of Biddleco shall state the terms and conditions of the merger, including the securities, cash, property, or rights to be issued, paid, delivered, or granted by the surviving corporation upon surrender of each share of Biddle not owned by Biddleco.

3. Plaintiffs also allege various defects in the merger transaction, including improper transfer of restricted shares.

with standing to assert claims for damages under section 10(b) of the Exchange Act and Rule 10b–5. Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967).

Plaintiffs allege that over a period of a year the individual defendants have engaged in a scheme of deceit and concealment for the purposes of squeezing plaintiffs out as shareholders of Biddle and obtaining their shares for less than true value. Involved in the alleged scheme, according to the amended complaint, were misrepresentations to plaintiffs as to the true value of their stock, concealment of facts from and deception of plaintiffs, particularly Robert Levine, and misrepresentation and nondisclosure of relevant financial information to the Mosely firm, which was retained to evaluate Biddle for the purpose of deciding how much to offer plaintiffs upon surrender of their shares in a Delaware short form merger. Finally, plaintiffs allege that the short form merger had no business purpose, but was for the sole purpose of eliminating plaintiffs' stock interest in Biddle.

■ Unlike the complaints in Popkin v. Bishop, 464 F.2d 714 (2d Cir. 1972) and Dreier v. the Music Makers Group, Inc. [1973–1974 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,406 (S.D. N.Y.1974), the complaint here is replete with allegations of misrepresentation and nondisclosure in connection with the merger. Indeed, the entire merger itself was, according to the amended complaint, conducted in secret and without notice to the plaintiffs until after the fact. Also alleged are misrepresentations and nondisclosures made to the Mosely firm for the purpose of driving

down its valuation of Biddle and consequently the value of plaintiffs' shares. Misrepresentations made to the Mosely firm would be material since fixation of the purchase price for plaintiffs' shares is a vital part of the merger transaction. *See* Voege v. American Sumatra Tobacco Corp., 241 F.Supp. 369, 374 (D.Del. 1965). Moreover, plaintiffs need not show reliance on the misrepresentations made to the Mosely firm in a situation such as this one where "no volitional act is required and the result of a forced sale is exactly that intended by the wrongdoer." Vine v. Beneficial Finance Co., 374 F.2d at 635. Finally, plaintiffs' right to appraisal under state law does not negate their claims under federal law. Vine v. Beneficial Finance Co., *supra*; Popkin v. Bishop, *supra*.[4]

The Court of Appeals has counseled that in situations where state law does not require prior shareholder approval, "it makes sense to concentrate on the impropriety of the conduct itself rather than on the 'failure to disclose' it because full and fair disclosure in a real sense will rarely occur." Popkin v. Bishop, 464 F.2d at 719. In addition to deception and nondisclosure, plaintiffs' amended complaint alleges improper self-dealing on the part of the individual defendants and use of the Delaware short form merger for the sole purpose of eliminating plaintiffs' stock interest in Biddle.

■ The Court finds that plaintiffs' amended complaint states a claim under section 10(b) of the Exchange Act and Rule 10b–5 upon which relief can be granted. Defendants' motion for judgment on the pleadings dismissing the amended complaint is therefore denied.

It is so ordered.

---

4. Biddle as the surviving corporation instituted an appraisal proceeding in the Delaware state courts pursuant to section 262 of the Delaware Corporation Law. Upon application of the plaintiffs, the proceeding has been stayed by the Chancellor pending disposition of this action.